IN THE UNITED STATES CRIMINAL COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIMINAL NO. 19-636-3 |
| **DESHAUN DAVIS**<br>a/k/a "Yayo" | : | |

**GOVERNMENT'S CHANGE OF PLEA MEMORANDUM**

The United States of America, by its attorneys, Jennifer Aribittier Williams, Acting United States Attorney for the Eastern District of Pennsylvania, and Matthew T. Newcomer and Meaghan A. Flannery, Assistant United States Attorneys, respectfully submits this change of plea memorandum.

**I.    BACKGROUND**

Defendant Deshaun Davis a/k/a "Yayo" is charged by indictment as the lead defendant in a 13-defendant, years-long conspiracy to distribute controlled substances (including cocaine base ("crack"), cocaine, fentanyl, and heroin) in the city of Chester, Pennsylvania, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) (Count One). He is also charged with four counts of the use of a communications facility to facilitate a drug offense, in violation of 21 U.S.C. § 843 (Counts Forty-Five, Fifty-Five, Fifty-Six, and Fifty-Seven), and one count of aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Sixty). These charges stem from Davis' leadership of the 3rd Bone Drug Trafficking Group ("3rd Bone DTG"), a violent street gang and drug trafficking organization that operated in and around Chester from in or about May 2016 through September 2019.

The government and the defendant have executed a guilty plea agreement pursuant to

1

Federal Rule of Criminal Procedure 11(c)(1)(C), through which the defendant has agreed to plead to all counts in the indictment (Counts One, Forty-Five, Fifty-Five, Fifty-Six, Fifty-Seven, and Sixty). Under this agreement, the parties have agreed to jointly recommend a sentence of 168 months' imprisonment on Count One to run concurrently with 48-months of imprisonment on each of Counts Forty-Five, Fifty-Five, Fifty-Six, and Fifty-Seven, followed by a consecutive term of 60 months' imprisonment on Count 60, for a total term of imprisonment of 228 months (19 years), a five-year term of supervised release, and a $600 special assessment. A copy of the plea agreement is attached as **Exhibit A**. A change of plea hearing with this Court is currently scheduled for September 9, 2021.

## II.     ELEMENTS OF THE CHARGED OFFENSES

### a. Count One (21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)) – Conspiracy to distribute cocaine, fentanyl, heroin, and 280 grams or more of cocaine base ("crack")

To establish a violation under these Sections, the government must prove the following elements beyond a reasonable doubt:

1. that two or more persons agreed to distribute a controlled substance;

2. that the defendant was a party or member of that agreement;

3. that the defendant joined the agreement or conspiracy knowing of its objective to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve that objective; and

4. that the controlled substances were cocaine, fentanyl, heroin, and a mixture and substance containing 280 grams or more of cocaine base ("crack")

*3rd Circuit Model Criminal Jury Instructions*, 6.21.846B (2018).

    b.  **Counts Forty-Five, Fifty-Five, Fifty-Six, Fifty-Seven (21 U.S.C. § 843(b)) – Use of a communications facility in furtherance of a drug offense**

To establish a violation of 21 U.S.C. § 843, the government must prove the following elements beyond a reasonable doubt:

1. The defendant used a telephone to facilitate or cause the commission of a predicate drug offense *(here, distribution of cocaine base ("crack"))*; and

2. The defendant did so knowingly.

*See United States v. Campbell*, 534 F.3d 599, 605 (7th Cir. 2008).

    c.  **Count Sixty (18 U.S.C. §§ 924(c), 2) – Aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime**

To establish a violation of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), the government must prove:

1. That another person committed a drug trafficking crime for which he may be prosecuted in a court of the United States;

2. That the other person acted knowingly and intentionally;

3. That the other person possessed a firearm in furtherance of that drug trafficking crime;

4. that the defendant knew that the offense was going to be committed by the other person;

5. that the defendant knowingly did some act for the purpose of aiding or assisting the commission of the offense and with the intent that the offense be committed; and

6. that the defendant performed an act in furtherance of the offense.

*3rd Circuit Model Criminal Jury Instructions*, No. 6.18.924A (2021), 7.02 (2018).

**III.   MANDATORY MINIMUM AND MAXIMUM PENALTIES**

For Count One (21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)) (conspiracy to distribute cocaine, heroin, fentanyl, and 280 grams or more of cocaine base "crack"), the maximum authorized penalty is lifetime imprisonment, a ten-year mandatory minimum term of imprisonment, a mandatory

minimum term of at least five years of supervised release up to a lifetime of supervised release, a $10,000,000 fine, and a $100 special assessment.

For each of Counts Forty-Five, Fifty-Five, Fifty-Six, and Fifty-Seven (21 U.S.C. § 843(b)) (use of a communications facility in furtherance of a drug offense), the maximum authorized penalty for each count is up to 4 years imprisonment, a $250,000 fine, a 1-year period of supervised release, and $100 special assessment.

For Count 60 (18 U.S.C. § 924(c)) (possession of a firearm in furtherance of a drug trafficking crime), the maximum penalty is life imprisonment, a 5-year mandatory minimum term of imprisonment which must be imposed consecutively to any other sentence of imprisonment imposed, a five-year period of supervised release, a $250,000 fine, and a $100 special assessment.

The Total Maximum Sentence is: life imprisonment, a 10-year mandatory minimum term of imprisonment on Count One followed by a 5-year consecutive mandatory minimum term of imprisonment on Count 60, a mandatory minimum 5 years' supervised release up to lifetime of supervised release, a $11,250,000 fine, and a $600 special assessment. Forfeiture of any property used or intended to be used in the commission of the offenses and/or constituting or derived from proceeds of the offenses also may be ordered.

### III.   PLEA AGREEMENT

The parties have entered into a written plea agreement, an unsigned copy of which is attached as Exhibit A. As noted, the plea agreement contains the defendant's agreement to plead guilty to Counts 1, 45, 55, 56, 57, and 60, and it contains the parties' joint recommendation of a sentence of 168 months' imprisonment on Count 1 to run concurrently with a 48 month sentence on each of Counts 45, 55, 56, and 57, followed by a consecutive term of imprisonment of 60 months on Count 60, for a total of 228 months' imprisonment (19 years), a 5-year period of

4

supervised release, and a $600 special assessment. The plea agreement contains the parties' stipulation and agreement that at least 280 grams of cocaine base ("crack") was possessed in furtherance of the criminal activity undertaken by the defendant, that this amount was reasonably foreseeable to the defendant in connection with the conspiracy, and that the defendant's Guideline range should be calculated based on this amount pursuant to USSG § 1B1.3. The parties further agree that the defendant was a leader or organizer of the criminal activity in which he participated, and that the criminal activity involved five or more participants, subjecting him to a (4 point) Guideline enhancement pursuant to U.S.S.G. § 3B1.1(a). The parties further stipulated that the defendant is eligible for a total 3-level downward adjustment under USSG § 3E1.1(a) and (b), due to the defendant's acceptance of responsibility and timely plea.

The plea agreement also contains the standard appellate waiver terms, which severely limit the defendant's avenues for an appeal.

## IV.     FACTUAL BASIS FOR THE PLEA

Were this case to proceed to trial, the government would establish the following facts beyond a reasonable doubt through witness testimony, audio and visual recordings including court-authorized telephone interceptions, and documentary and physical evidence:[1]

During the period of in or about May 2016 through September 2019, defendant Deshaun Davis entered into a conspiratorial agreement with other members of the 3rd Bone Drug Trafficking Group ("3rd Bone DTG") to distribute controlled substances – primarily cocaine base ("crack" or "crack cocaine") – in and around the city of Chester, in the Eastern District of

---

[1] This proffered statement of facts is intended only to establish a sufficient basis for the defendant's guilty plea. It does not set forth all of the facts or evidence that the government would present at trial. Nor does it set forth all of the facts or evidence that the government may present when prosecuting other individuals involved in these offenses.

Pennsylvania. Under this criminal agreement, Davis supplied bulk amounts of crack to other members of the 3rd Bone DTG, who then distributed the drugs to customers within their territory. As a general matter, the members of the 3rd Bone DTG controlled the drug trade in the DTG's geographic territory and did not permit individuals who were not affiliated with the DTG to sell drugs in that territory.

The defendant was the self-described "Top Dog" and leader of the 3rd Bone DTG. As part of his role at the top of the 3rd Bone hierarchy, defendant Davis "cooked" bulk amounts of crack that he supplied to other 3rd Bone DTG members, particularly co-defendants Tyleel Scott-Harper, Brandon Scott-Harper, Isaiah Jenifer, and Frederick Rochester. These co-defendants then resold this crack to the DTG's drug customers in exchange for cash. Davis also participated in numerous communications over text, telephone calls, and social media, in which members of the 3rd Bone DTG discussed and coordinated their drug trafficking and other criminal activities.

On March 17, 2018, Davis was caught via a text exchange resupplying co-defendant Jenifer with 2 ½ ounces of crack (Count 45). During the course of the government's court-authorized wiretap of Davis' cellular phone, on November 9, 2018, Davis was caught resupplying co-defendant Brandon Scott-Harper with an ounce of crack (Count 55), and co-defendant Tyleel Scott-Harper with a quarter ounce of crack (Count 56). Right at the time of these intercepted communications, law enforcement surveillance observed a vehicle registered to co-defendant Brandon Scott-Harper in the vicinity of Davis' home (and stash house) at 1002 W. 3rd Street, in Chester. Also on November 9, 2018, Davis was intercepted agreeing to sell co-defendant Butler two ounces of crack for $2,300; pole camera footage of a vehicle registered to co-defendant Butler puts him in the vicinity of Davis' home during the time of this discussion (Count 57). During the course of the court-authorized wiretaps of Davis's phone and co-defendant Butler's phone, Davis

6

was intercepted making additional re-supplies of narcotics on at least 20 other occasions, including as charged in Overt Acts 77, 85, 95, 109, 113, 115, 116, 134-36, 146, 147-48, 149-50, 151-52, 154-55, 157-58, 160, 176-77, 178, 179-80, 181, 182, and 183. Furthermore, an October 30, 2019 court-authorized search of Davis' home (and stash house) uncovered crack, drug packaging material including four digital scales, and an additional quantity of crack that the defendant appears to have attempted to flush down the toilet as authorities were entering his home.

In his leadership role, Davis orchestrated and encouraged acts of violence on behalf of the 3rd Bone DTG, particularly against rival gang members to protect 3rd Bone territory and to further the objectives of the DTG. Wire interceptions from on or about November 19, 2018, would establish that Davis and co-defendant Tyleel Scott-Harper planned the shooting of a rival gang member. These interceptions establish that Scott-Harper was in continuous contact with Davis as Scott-Harper tracked this rival gang member, that Scott-Harper had plans to shoot him, and that Scott-Harper was directly behind the unsuspecting target's vehicle. Based on these calls, and fearing an act of violence was imminent, FBI and DEA contacted the Chester Police Department to conduct a uniform stop of the car in which Scott-Harper was driving. Chester police initiated a traffic stop on a gold minivan owned by co-defendant Brandon Scott-Harper (Tyleel's brother), and the occupants jumped out and abandoned the vehicle. Police stopped Tyleel Scott-Harper and recovered the car key to the gold minivan, a police scanner, and bullets. The defendant also used the DTG's Facebook "group" to warn his co-conspirators about rival gang activity.[2]

Davis, a felon, was also intercepted on the wiretap talking with his co-conspirators about their possession and sharing of firearms, including a lengthy discussion with co-defendant Tyleel

---

[2] Davis also used this group to warn of police activity in 3rd Bone territory.

Scott-Harper on November 8, 2018 (OA 119-22). During this call, the defendant asked co-defendant Scott-Harper about the "FN" pistol. Scott-Harper explained that he cleaned the gun and it was working perfectly. Davis was pleased because he paid $700 for the firearm. Less than two weeks later, Scott-Harper was caught with a loaded FNX-40 semiautomatic handgun, with a partially obliterated serial number, and several live rounds of .40 caliber and .9 caliber ammunition.[3] (OA 163-165, Count 60).

At all relevant times, defendant Davis was a knowing party to the conspiratorial agreement regarding the 3rd Bone DTG's drug distribution. Davis understood that the objective of the conspiracy was to obtain, possess with intent to distribute, and distribute crack and other controlled substances in order to generate monetary proceeds. By personally possessing and selling crack and assisting others in selling crack as part of this scheme, Davis demonstrated a unity of purpose and intent to traffic controlled substances in violation of federal law. As part of his plea agreement, Davis and the government have entered into a stipulation that at least 280 grams of crack is attributable to him as part of the conspiracy.

An expert drug laboratory chemist would testify at trial that the seized suspected controlled substances referenced above were in fact crack. An expert in the field of drug trafficking would testify that the controlled substances seized from the defendant were consistent with drug distribution. This expert would also testify that guns are "tools of the trade" of drug-trafficking and that co-defendant Scott-Harper possessed a firearm in furtherance of the drug conspiracy, which possession was aided and abetted by Davis.

---

[3] Scott-Harper was also caught with approximately .96 grams of cocaine base ("crack") packaged in eleven individual vials for re-distribution, $405 in cash, and a police scanner. (OA 163-165, Counts 59 and 60).

## V. CONCLUSION

The United States respectfully submits that this summary of evidence provides a factual basis for a guilty plea by the defendant to Counts 1, 45, 55, 56, 57, and 60 of the indictment. The government therefore respectfully requests that the Court find that the defendant's guilty plea is being tendered to the Court voluntarily, knowingly, and intelligently, and is supported by the requisite factual basis.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
*Acting United States Attorney*

*/s Matthew T. Newcomer*
MATTHEW T. NEWCOMER
MEAGHAN A. FLANNERY
*Assistant United States Attorneys*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing document was sent via ECF filing and/or electronic mail to the following:

Nino Tinari, Esquire

Eugene Tinari, Esquire

*Counsel for Defendant Deshaun Davis*

/s Meaghan A. Flannery
MATTHEW T. NEWCOMER
MEAGHAN A. FLANNERY
*Assistant United States Attorneys*

Dated: September 9, 2021